IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| RUDOLPH HILLIARD, | ) | Case No. 1:16-CV-2786 |
| | ) | |
| Petitioner, | ) | JUDGE JAMES S. GWIN |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | THOMAS M. PARKER |
| CHARMAINE BRACY, Warden, | ) | |
| | ) | |
| Respondent. | ) | **REPORT & RECOMMENDATION** |
| | ) | |

## I.  Introduction

Petitioner, Rudolph Hilliard, an Ohio prisoner serving an aggregate prison term of 25 years to life for aggravated murder and kidnapping, seeks a writ of habeas corpus under 28 U.S.C. § 2254.  Hilliard claims that his convictions and sentences in *State of Ohio v. Hilliard*, Case No. CR10-535768-A, violated his constitutional rights.  Hilliard amended his petition on March 30, 2017.  ECF Doc. 9.  Respondent, Warden Charmaine Bracy[1], filed a return of writ on January 31, 2017, and a supplemental return of writ on May 8, 2017.  ECF Docs. 6 and 11. Hilliard filed a traverse on May 25, 2017.  ECF Doc. 9 12.  This matter is before me by an automatic order of reference under Local Rule 72.2 for preparation of a report and recommendation on Hilliard's petition or other case-dispositive motions.  Because all of

---

[1] Charmaine Bracy was warden of the Trumbull Correctional Institution of the Ohio Department of Rehabilitation and Correction, the facility at which Hilliard was incarcerated when he commenced this action.  On September 20, 2017, Hilliard filed a notice that he had been reassigned to the Northeast Ohio Correctional Center in Youngstown, Ohio.  ECF Doc. 14.  Christopher LaRose is warden of that institution.  https://www.drc.ohio.gov/northeastocc (last visited November 26, 2018).

Hilliard's claims are procedurally defaulted, non-cognizable, or meritless, I recommend that the Court deny Hilliard's petition.

II.     **State Court History**

A.      **State Trial Court Conviction, Case No. CR-10-535768**

On April 1, 2010, a Cuyahoga County, Ohio grand jury indicted Hilliard on one count of aggravated murder in violation of Ohio Rev. Code § 2903.01(A) ("Count 1"), and one count of kidnapping in violation of Ohio Rev. Code § 2905.01(A)(2) ("Count 2"). ECF Doc. 6-1 at Ex. 1, Page ID# 50–51. On April 6, 2010, Hilliard entered an initial plea of not guilty to both charges. ECF Doc. 6-1 at Ex. 2, Page ID# 52. On April 20, 2011, Hilliard, represented by counsel, withdrew his original plea of not guilty and pleaded guilty to both charges. ECF Doc. 6-1 at Ex. 3, Page ID# 53. The court accepted Hilliard's plea. *Id.*

On April 28, 2011, the court held a sentencing hearing, at which Hilliard was represented by counsel. ECF Doc. 6-2, Page ID# 262–75. In mitigation, defense counsel stated:

> I know that you are aware of some of the background of this young man through some psychiatric testing that was done. . . . I know you are aware of the fact that this young man has a complete lack of prior criminal history. I know you are aware of his youth and age. Again, those aren't excuses, . . . [b]ut they are meant for consideration of the Court in determining the applicable sentence within the guideline range. . . . I would state that Rudolph has acknowledged his guilt here in open court. On a prior date last week he has admitted what he's done, he accepted full responsibility by pleading guilty to the indictment as charged. . . . So I believe he did step forward, accept full responsibility to the indictment, and again in a few moments he'll express his remorse.

*Id.* at 263–64. The court sentenced Hilliard to a prison term of 25 years to life on Count 1 and a concurrent prison term of 7 years on Count 2. ECF Docs. 6-1 at Ex. 4 and 6-2, Page ID# 54, 273–74. The court stated that it considered the record, the statements made at sentencing, the principles of sentencing, and "all required factors of the law" in imposing sentence. *Id.*

### B.        Direct Appeal, Case No. CA-14-102214

Three and a half years after conviction, on November 18, 2014, Hilliard, *pro se*, moved

for leave to file a delayed appeal in the Ohio Court of Appeals.  ECF Doc. 6-1 at Exs. 6 and 7,

Page ID# 66–67.  The appellate court granted Hilliard's motion and appointed counsel.  ECF

Doc. 6-1 at Ex. 8, Page ID# 74.  Hilliard raised the following assignments of error:

> (1) The trial court erred by failing to merge allied offenses of similar import and
>     by imposing separate sentences for allied offenses which violated appellant's
>     state and federal rights to due process and protections against double
>     jeopardy; and
>
> (2) Whether the trial court's sentence is supported by the record or is contrary to
>     law.

ECF Doc. 6-1 at Ex. 9, Page ID# 78, 82–90.

On August 6, 2015, the court of appeals affirmed Hilliard's convictions and sentences.

ECF Doc. 6-1 at Ex. 12, Page ID# 104–25.  The court of appeals determined that Hilliard had

forfeited his allied offenses argument by failing to raise it before the trial court but reviewed the

argument to determine whether the trial court committed plain error by not merging the

aggravated murder and kidnapping convictions for sentencing.  *Id.* at 112.  In doing so, the court

relied on the Ohio Supreme Court's June 24, 2015, decision in *State v. Rodgers*, 143 Ohio St.3d

385, 387, 38 N.E.3d 860, 2015-Ohio-2459, which reversed a lower court ruling that a trial court

has a duty to inquire about allied offenses when the defense fails to raise the issue at sentencing.

ECF Doc. 6-1 at Ex. 12, Page ID# 112, 119.  The court found that, because the record did not

contain sufficient facts to determine whether Hilliard's kidnapping and aggravated murder

convictions were allied offenses of similar import, he "failed to meet his burden of

demonstrating a reasonable probability that his convictions constituted allied offenses of similar

3

import." *Id.* at 120–21.  Thus, the court held that the trial court did not commit plain error by not

merging Hilliard's aggravated murder and kidnapping convictions for sentencing.  *Id.* at 121.

### C.        Appeal to the Supreme Court of Ohio, Case No. 2015-1537

On September 10, 2015, Hilliard, *pro se*, appealed to the Ohio Supreme Court.  ECF

Doc. 6-1 at Ex. 13, Page ID# 126–27.  Hilliard's memorandum in support of jurisdiction raised

the following:

> Proposition of Law No. I:
> The trial court erred by failing to merge allied offenses of similar import and by
> imposing separate sentences for allied offenses which violated the appellant's
> state and federal rights to due process and protections against double jeopardy.

> Proposition of Law No. II:
> Whether the trial court's sentence is supported by the record or is contrary to law.

ECF Doc. 6-1 at Ex. 14, Page DI# 129, 132–35.  On November 10, 2015, the Ohio Supreme

Court declined jurisdiction.  ECF Doc. 6-1 at Ex. 16, Page ID# 160.  Hilliard did not appeal to

the United States Supreme Court.

### D.        State Post-Conviction Proceedings

On July 7, 2015, Hilliard, *pro se*, filed a post-conviction petition to vacate or set aside

judgment of conviction or sentence, pursuant to Ohio Rev. Code § 2953.21.  ECF Doc. 6-1 at

Ex. 17, Page ID# 161–72.  Hilliard raised the following claims in his post-conviction petition:

> (1) The trial court violated due process right to the 5th and 14th Amendment[s] to
> the United States Constitution and Article I, Section 16 of the Ohio
> Constitution.  The trial court failed to advise defendant-petitioner [of] his right
> to appeal.

> (2) The trial court failed to merge allied offenses of similar import and by
> imposing separate sentences for allied offenses which violated the
> defendant-petitioner's 5th Amendment right to the United States Constitution
> and Section 10, Article I to the Ohio Constitution rights protections against
> double jeopardy.

(3) The defendant was violated of his Sixth Amendment right to the United States Constitution, and Section 10, Article I to the Ohio Constitution when the defendants-petitioner trial counsel was ineffective. They failed to advise defendant-petitioner his right to appeal and allowed defendant-petitioner to plea to a void sentence. Trial counsel failed to fully investigate other mitigating factors in this case that could have resulted in a lesser charge for the defendant-petitioner.

ECF Doc. 6-1 at Ex. 17, Page ID# 164–71. Hilliard attached to his petition an affidavit, stating that the court did not advise him of his right to appeal, that counsel was ineffective for allowing him to "plead to a void sentence" and failing to fully investigate mitigating factors, and that the court failed to merge his allied offenses. ECF Doc. 6-1 at Ex. 17, Page ID# 173. On July 17, 2015, the state trial court denied Hilliard's petition, stating only that "defendant's petition to vacate or set aside judgment of conviction or sentence filed 07-07-15 is hereby denied." ECF Doc. 6-1 at Ex. 18, Page ID# 176.

On July 23, 2015, Hilliard filed a "motion for findings of facts and conclusions of law," asserting that the court's summary denial did not provide him with a final appealable order from which there could be meaningful review. ECF Doc. 6-1 at Ex. 19, Page ID# 177–79. On August 3, 2015, the court denied Hilliard's motion. ECF Doc. 6-1 at Ex. 20, Page ID# 181. Hilliard did not appeal from the denial of his state post-conviction petition.

### E.    Application to Reopen Direct Appeal

On October 27, 2015, Hilliard filed an application to reopen his direct appeal under Ohio Appellate Rule 26(B). ECF Doc. 6-1 at Ex. 21, Page ID# 182–87. Hilliard asserted that appellate counsel was constitutionally ineffective because he did not argue on direct appeal that he was denied effective assistance of trial counsel. *Id.* Specifically, Hilliard contended that appellate counsel should have argued that:

(1) Trial court and trial counsel failed to fully investigate other mitigating factors that would have changed the outcome of the case.

5

> (2) Trial court and trial counsel failed to raise the issue of allied offenses at sentencing and also trial counsel failed to object to the court's sentencing knowing that a[] hearing should have taken place before sentencing to determine the merger of the two charges for allied offense.  Mr. Hilliard's right to due process and effective assistance of counsel was violated to the 5th, 6th, and 14th Amendments to the U.S. Constitution and Section 5 and 16, Article I to the Ohio Constitution.

ECF Doc. 6-1 at Ex. 21, Page ID# 184–86.  Hilliard attached to his application an affidavit, stating that appellate counsel was ineffective for "fail[ing] to raise a winning issue(s) on my delayed appeal," and that he was prejudiced by the failure to raise the issues raised in his application to reopen.  ECF Doc. 6-1 at Ex. 21, Page ID# 188.

The Ohio Court of Appeals denied Hilliard's motion to reopen his appeal, holding that Hilliard's appellate counsel was not ineffective for failing to present the arguments raised in Hilliard's application to reopen.  ECF Doc. 6-1 at Ex. 23, Page ID# 197–202.  Applying the two-part *Strickland v. Washington*, 466 U.S. 668 (1984), test, the court determined that appellate counsel's decision "to address the issue of allied offenses directly rather than indirectly through the [lens] of ineffective assistance of trial counsel" should not be second guessed by the courts. *Id.* at 200–01.  The court also stated that the record was not developed enough to sustain an allied offense argument, and that a "second-by-second recounting of the incident to show there was not an independent kidnapping would have been inconsistent with the strategy" to show that Hilliard was remorseful and accepted responsibility for his actions.  *Id.* at 201.  Further, the court determined that appellate counsel was not deficient for failing to anticipate the Ohio Supreme Court's later holding that a trial court is not obligated to inquire about allied offense issues not raised by the parties.  *Id.*

On August 23, 2015, Hilliard appealed the denial of his application to reopen to the Ohio Supreme Court.  ECF Doc. 6-1 at Ex. 25, Page ID# 204–05.  Hilliard's memorandum in support of jurisdiction raised the following:

> Proposition of Law No. I:
> The trial court erred by failing to merge allied offenses of similar import and by imposing separate sentences for allied offenses which violated the appellant's state and federal rights to due process and protections against double jeopardy.
>
> Proposition of Law No. II:
> There was insufficient evidence to support a[n] independent crime of kidnapping.
>
> Proposition of Law No. III:
> Trial court and trial counsel failed to fully investigate other mitigating factors that would have changed the outcome of the case.

ECF Doc. 6-1 at Ex. 26, Page ID# 207, 212–216.  On January 25, 2017, the Ohio Supreme Court declined jurisdiction.  ECF Doc. 11-1, Page ID# 316.  Hilliard did not appeal to the United States Supreme Court.

### F.  Federal Habeas Corpus Petition

On November 9, 2016, Hilliard, *pro se*, petitioned for writ of habeas corpus from this court, raising two grounds for relief.  ECF Doc. 1, Page ID# 7, 10.  On February 6, 2017, Hilliard moved for leave to amend his petition "to include the issues that were pending in the state court related to his filing of an Application to Reopen his Appeal."  ECF Doc. 7, Page ID# 277–78.  On March 13, 2017, Hilliard filed his amended petition, adding a third ground for relief.  ECF Doc. 9-1, Page ID# 292.  As amended, Hilliard's petition raises the following claims:

> **GROUND ONE:**  Petitioner was violated of his due process of law of effective assistance of counsel when trial counsel failed to fully investigate other mitigating factors that would have changed the outcome of petitioner['s] case.
>
> **Supporting facts:**  Trial counsel failed to bring up the fact that petitioner was a[] first time offender and should have asked the court to consider the minimum sentence [due] to petitioner [having] never had a criminal history and that he showed remorse for his actions.

**GROUND TWO:**  Petitioner was denied due process and equal protection of law to the Fourteenth Amendment to the United States Constitution.

**Supporting Facts:**  The trial court did not give any reason for the denial of petitioner's post conviction petition after the petition was filed within 180 days.

**GROUND THREE:**  Petitioner's due process was violated with the ineffectiveness of appellate counsel on his appeal.

**Supporting Facts:**  Appellate counsel fail[ed] to bring up the fact that the petitioner's trial counsel failed to raise[] the issue of allied offense at sentencing. Appellate counsel also failed to acknowledge that trial counsel failed to object to the sentencing to let the court know that a hearing must take place to make a determination if the two charges should merge.

ECF Docs. 1 and 9–9-2, Page ID# 7, 10–11, 287, 290–92.  Hilliard's petition states that he did not appeal the denial of his post-conviction petition, because "the judge never provided [him] any reason why he denied [his] petition which doesn't give [him] anything to appeal" and because he "had no knowledge that [he] should have or could have appeal[ed] the denial of the motion."  ECF Doc. 9, Page ID# 288.  He notes that he did not raise Ground Three in a post-conviction petition, but that he raised it in his application to reopen his appeal.  ECF Doc. 9-2, Page ID# 294–95.

## III.     Applicable Habeas Corpus Legal Principles

### A.     AEDPA Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") governs Hilliard's petition for writ of habeas corpus.  *See Lindh v. Murphy*, 521 U.S. 320, 326–27 (1997) (holding that the AEDPA governs petitions filed after April 24, 1996); *Murphy v. Ohio*, 551 F.3d 485, 493 (6th Cir. 2009).  Congress enacted AEDPA, which amended 28 U.S.C. § 2254, "to reduce delays in the execution of state and federal criminal sentences . . . and 'to further the principles of comity, finality, and federalism.'"  *Woodford v. Garceau*, 538 U.S. 202, 206 (2003)

(quoting *(Michael) Williams v. Taylor*, 529 U.S. 420, 436 (2000)).  AEDPA "recognizes a foundational principle of our federal system:  State courts are adequate forums for the vindication of federal rights." *Burt v. Titlow*, 134 S. Ct. 10, 15 (2013).  It therefore "erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court." *Id.*

One of AEDPA's most significant limitations on district courts' authority to grant writs of habeas corpus is found in § 2254(d).  That provision prohibits habeas relief with respect to a "claim that was adjudicated on the merits in State court proceedings," unless the state court decision:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Habeas courts review the "last *explained* state-court judgment" on the federal claim at issue.  *Ylst v. Nunnemaker*, 501 U.S. 797, 805 (1991) (emphasis original).  "When a federal claim has been presented to a state court and the state court has denied relief, it is presumed that the claim was adjudicated "on the merits" in the absence of any indication or state law procedural principles to the contrary." *Harrington v. Richter*, 562 U.S. 86, 99 (2011).  This is true even when the state court provided little or no reasoning at all for its decision. *Id.*  "Whe[n] a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief." *Id.* at 98.

9

"[R]eview under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011). "Clearly established federal law" for purposes of § 2254(d)(1) "is the governing legal principle or principles set forth by the United States Supreme Court at the time the state court renders its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003).  It includes "only the holdings, as opposed to the dicta, of [Supreme Court] decisions." *White v. Woodall*, 134 S. Ct. 1697, 1702 (2014) (internal quotation marks and citations omitted).  The state court decision need only reach a result and apply reasoning consistent with Supreme Court precedent, and need not refer to, or even demonstrate awareness of, relevant Supreme Court cases. *Early v. Packer*, 537 U.S. 3, 8 (2002) (per curiam).  A state court decision is contrary to clearly established federal law only if it: (1) "arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law"; or (2) "decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000).  When Supreme Court precedent is ambiguous or nonexistent, a state court cannot act contrary to clearly established federal law. *See, e.g., Mitchell v. Esparza*, 540 U.S. 12, 17 (2003) (per curiam).

To show that a state court decision is an "unreasonable determination of the facts" under § 2254(d)(2), a petitioner has the burden of presenting clear and convincing evidence that the state court made a clear factual error. *Wiggins v. Smith*, 539 U.S. 510, 528-29 (2003); *Burt*, 134 S. Ct. at 15; *see also Rice v. White*, 660 F.3d 242, 250 (6th Cir. 2011).  This requirement mirrors the "presumption of correctness" that AEDPA affords state court factual determinations, which only can only be overcome by clear and convincing evidence.  28 U.S.C.  § 2254(e)(1).  The Supreme Court has cautioned, "'a state-court factual determination is not unreasonable merely

because the federal habeas court would have reached a different conclusion in the first instance.'" *Burt*, 134 S. Ct. at 15 (quoting *Wood v. Allen*, 558 U.S. 290, 301 (2010)).

The Supreme Court has emphasized that § 2254(d), as amended by AEDPA, is an intentionally demanding standard, affording great deference to state court adjudications of federal claims. *See, e.g., Harrington*, 562 U.S. at 102 ("If this standard is difficult to meet, that is because it is meant to be."). The Court has admonished that a reviewing court may not "treat[] the reasonableness question as a test of its confidence in the result it would reach under *de novo* review," and that "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.*; *see also Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) ("The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable – a substantially higher threshold."). Rather, § 2254(d) "reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems" and does not function as a "substitute for ordinary error correction through appeal." *Harrington*, 562 U.S. at 102–03 (internal quotation marks omitted). Thus, a petitioner "must show that the state court's ruling . . . was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103.

## B.    Exhaustion and Procedural Default

Under AEDPA, state prisoners must exhaust all possible state remedies, or have no remaining state remedies, before a federal court can review a petition for a writ of habeas corpus on the merits. 28 U.S.C. § 2254(b) and (c); *see also Rose v. Lundy*, 455 U.S. 509 (1982). This entails giving the state courts "one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v.*

11

*Boerckel*, 526 U.S. 838, 845 (1999).  In other words, "the highest court in the state in which the petitioner was convicted [must have] been given a full and fair opportunity to rule on the petitioner's claims." *Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir. 1990).  The exhaustion requirement, however, "refers only to remedies still available at the time of the federal petition." *Engle v. Isaac*, 456 U.S. 107, 125 n.28 (1982); *see also Woodford v. Ngo*, 548 U.S. 81, 92–93 (2006) ("In habeas, state-court remedies are described as having been 'exhausted' when they are no longer available, regardless of the reason for their unavailability.").  It "does not require pursuit of a state remedy [when] such a pursuit is clearly futile." *Wiley v. Sowders*, 647 F.2d 642, 647 (6th Cir. 1981).

Procedural default is a related but "distinct" concept from exhaustion.  *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006).  It occurs when a habeas petitioner fails to obtain consideration of a federal constitutional claim by state courts because he failed to:  (1) comply with a state procedural rule that prevented the state courts from reaching the merits of the petitioner's claim; or (2) fairly raise that claim before the state courts while state remedies were still available.  *See generally Wainwright v. Sykes*, 433 U.S. 72, 80, 84–87 (1977); *Engle*, 456 U.S. at 125 n.28; *Williams*, 460 F.3d at 806.  In determining whether there has been a procedural default, the federal court again looks to the last explained state court judgment.  *Ylst*, 501 U.S. at 805; *Combs v. Coyle*, 205 F.3d 269, 275 (6th Cir. 2000).

When a state court declines to address a prisoner's federal claims because the prisoner failed to meet a state procedural requirement, federal habeas review is barred as long as the state judgment rested on "independent and adequate" state procedural grounds.  *Coleman v. Thompson*, 501 U.S. 722, 729 (1991).  To be independent, a state procedural rule and the state courts' application of it must not rely in any part on federal law.  *Id.* at 732–33.  To be adequate,

a state procedural rule must be "'firmly established' and 'regularly followed'" by the state courts at the time it was applied.  *Beard v. Kindler*, 558 U.S. 53, 60–61 (2009).[2]

A petitioner also procedurally defaults a claim by failing to "fairly present" the claim in state court and pursuing that claim through the state's "'ordinary appellate review procedures,'" if, at the time of the federal habeas petition, state law no longer allows the petitioner to raise the claim.  *Williams*, 460 F.3d at 806 (quoting *O'Sullivan*, 526 U.S. at 848); *see also Baston v. Bagley*, 282 F. Supp. 2d 655, 661 (N.D. Ohio 2003) ("Issues not presented at each and every level [of the state courts] cannot be considered in a federal habeas corpus petition.").  Under these circumstances, while the exhaustion requirement is technically satisfied because there are no longer any state court remedies available to the petitioner, the petitioner's failure to have the federal claims fully considered in the state courts constitutes a procedural default of those claims and bars federal habeas review.  *Williams*, 460 F.3d at 806 ("[When] state court remedies are no longer available to a petitioner because he or she failed to use them within the required time period, procedural default and not exhaustion bars federal court review."); *see also Gray v. Netherland*, 518 U.S. 152, 161–62 (1996) ("Because the exhaustion requirement 'refers only to

---

[2] In *Maupin v. Smith*, 785 F.2d 135 (6th Cir. 1986), the Sixth Circuit set forth a four-part test to be followed when the state argues that a habeas claim is defaulted because of a prisoner's failure to observe a state procedural rule.  It is:

> First, the federal court must determine whether there is a state procedural rule that is applicable to the petitioner's claim and whether the petitioner failed to comply with that rule.  Second, the federal court must determine whether the state courts actually enforced the state procedural sanction—that is, whether the state courts actually based their decisions on the procedural rule.  Third, the federal court must decide whether the state procedural rule is an adequate and independent state ground on which the state can rely to foreclose federal review of a federal constitutional claim.  Fourth, if the federal court answers the first three questions in the affirmative, it would not review the petitioner's procedurally defaulted claim unless the petitioner can show cause for not following the procedural rule and that failure to review the claim would result in prejudice or a miscarriage of justice.

*Williams v. Coyle*, 260 F.3d 684, 693 (6th Cir. 2001) (citing *Maupin*, 785 F.2d at 138) (further citations omitted).

remedies still available at the time of the federal petition,' . . . it is satisfied 'if it is clear that [the habeas petitioner's] claims are now procedurally barred under [state] law.'" (internal citations omitted)).

Furthermore, to "fairly present" a claim to a state court, a petitioner must assert both its legal and factual basis. *Williams*, 460 F.3d at 806 (citing *McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000)). Most importantly, a "'petitioner must present his claim to the state courts as a federal constitutional issue – not merely as an issue arising under state law.'" *Id.* (quoting *Koontz v. Glossa*, 731 F.2d 365, 368 (6th Cir. 1984)).[3]

A petitioner can overcome a procedural default by demonstrating cause for the default and actual prejudice that resulted from the alleged violation of federal law, or that there will be a "fundamental miscarriage of justice" if the claim is not considered. *Coleman*, 501 U.S. at 750. "'[C]ause' under the cause and prejudice test must be something external to the petitioner, something that cannot be fairly attributed to him." *Id.* "[T]he existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Id.*

"A fundamental miscarriage of justice results from the conviction of one who is 'actually innocent.'" *Lundgren v. Mitchell*, 440 F.3d 754, 764 (6th Cir. 2006) (citing *Murray v. Carrier*, 477 U.S. 478, 496 (1986)). Actual innocence means "factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623 (1998). "To be credible, such a

---

[3] Federal habeas courts review a petitioner's state-court briefs to determine whether he or she fairly presented a claim as a federal constitutional claim, examining the petitioner's:

> "(1) reliance upon federal cases employing constitutional analysis; (2) reliance upon state cases employing federal constitutional analysis; (3) phrasing the claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right; or (4) alleging facts well within the mainstream of constitutional law."

*Williams*, 460 F.3d at 806 (quoting *Newton v. Million*, 349 F.3d 873, 877 (6th Cir. 2003)).

claim requires petitioner to support his allegations of constitutional error with new reliable evidence . . . that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324 (1995).

### C.    Cognizability

To the extent that a claim asserted in a federal habeas petition alleges purely state-law violations, it is not cognizable upon federal habeas review and must be dismissed on that basis, unless the state court ruling violates a fundamental federal constitutional right.  "It is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.  In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 68 (1991) (citing 28 U.S.C. § 2241); *see also Lewis v. Jeffers*, 497 U.S. 764, 780 (1990) ("[F]ederal habeas corpus relief does not lie for errors of state law."); *Engle v. Isaac*, 456 U.S. 107, 121 n.21 (1982) ("We have long recognized that a 'mere error of state law' is not a denial of due process.") (citation omitted)).

Moreover, "a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus." *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) (citing *Estelle*, 502 U.S. at 67-68).  A federal habeas court does not function as an additional state appellate court reviewing state courts' decisions on state law or procedure.  *Allen v. Morris*, 845 F.2d 610, 614 (6th Cir. 1988).

However, state court rulings on issues of state law may rise to the level of due process violations if they "'offend[] some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental.'" *Seymour v. Walker*, 224 F.3d 542, 552 (6th Cir. 2000) (quoting *Montana v. Egelhoff*, 518 U.S. 37, 43 (1996)).  Such rulings must be "so egregious that [they] result in a denial of fundamental fairness." *Bugh v. Mitchell*, 329 F.3d 496,

15

512 (6th Cir. 2003). Fundamental fairness under the Due Process Clause is compromised when "the action complained of . . . violates those 'fundamental conceptions of justice which lie at the base of our civil and political institutions,' . . . and which define 'the community's sense of fair play and decency.'" *Dowling v. United States*, 493 U.S. 342, 352 (1990) (internal citations omitted). Courts, therefore, "have defined the category of infractions that violate 'fundamental fairness' very narrowly." *Id.*

In *Cress v. Palmer*, the Sixth Circuit affirmed a district court's order dismissing as non-cognizable a § 2254 petitioner's claims alleging due process violations in his state post-conviction proceedings. 484 F.3d 844, 855 (6th Cir. 2007). The court noted that it had "consistently held that errors in post-conviction proceedings are outside the scope of federal habeas corpus review." *Id.* at 853. The court explained that 28 U.S.C. § 2254 provides only for claims attacking the legality of custody and seeking release from illegal custody, whereas a due process claim challenging post-conviction proceedings would not "in any way affect [the petitioner's] detention because [the court] would not be reviewing any matter directly pertaining to his detention." *Id.* (internal quotation marks omitted); *see also Kirby v. Dutton*, 794 F.2d 245, 248 (6th Cir. 1986) (stating that, although the ultimate goal of a post-conviction petition is release from confinement, the result of habeas review of post-conviction procedures is not related to confinement).

## IV.    Relevant Ohio Law

An Ohio criminal defendant has 30 days from the date his conviction and sentence becomes final to file a timely direct appeal. Ohio R. App. P. 4(A). An appellant is limited to presenting claims based on issues in the trial court record. *See State v. Johnson*, No. 97698, 2012 WL 3612093 at *5 (Ohio Ct. App., Aug. 23, 2012) ("On direct appeal we are limited to a

16

review of the trial record.").  This limitation precludes a criminal defendant from presenting most claims that trial counsel rendered constitutionally ineffective assistance.  *See id.* (stating that, a defendant claiming that trial counsel was ineffective for failing to call a witness would "never be able to establish prejudice on direct appeal because the appellate court is limited to facts that appear in the record before the trial court.").  Nevertheless, when a criminal defendant is represented by new counsel on direct appeal and the trial court record contains sufficient evidence to determine whether trial counsel was ineffective, he must present that claim on direct appeal.  *See State v. Cole*, 443 N.E.2d 169, 171 (Ohio 1982) (holding that *res judicata* precludes a post-conviction petitioner from raising such a claim for the first time in his post-conviction petition); *State v. Reynolds*, 679 N.E.2d 1131, 1133 (Ohio 1997) ("It is established that, pursuant to *res judicata*, a defendant cannot raise an issue in a motion for postconviction relief if he or she could have raised the issue on direct appeal.")

Ohio post-conviction procedure is governed by Ohio Rev. Code § 2953.21.  When an Ohio criminal defendant fails to file a timely direct appeal, his post-conviction motion must be filed no later than 365 days after the time expired for filing a timely appeal, regardless of whether he is later granted leave to file a delayed appeal.  Ohio Rev. Code § 2953.21(A)(2); *State v. Fields*, 736 N.E.2d 933, 935 (Ohio Ct. App. 1999) (interpreting the timeliness requirements of the pre-2015 statute[4]).  When a trial court dismisses a timely post-conviction petition, the court must "make and file findings of fact and conclusions of law with respect to such dismissal."  Ohio Rev. Code § 2953.21(D).  But, "a trial court need not issue findings of fact and conclusions of law when it dismisses an untimely petition."  *State ex rel. Kimbrough v.*

---

[4] In 2014, Ohio amended Ohio Rev. Code § 2953.21(A)(2), by extending the period for filing a post-conviction petition from 180 days to 365 days after the time to file a timely appeal expired.  *See* 2014 Ohio House Bill 663 (effective March 20, 2015); *compare* Ohio Rev. Code § 2953.21(A)(2) (2011–2013), *with* Ohio Rev. Code § 2953.21(A)(2) (2014).

*Greene*, 781 N.E.2d 155, 156 (Ohio 2002).  When a court dismisses a post-conviction petition as

untimely, the dismissal order is immediately final and appealable.  *State ex rel. Williams v.*

*Krichbaum*, No. 07-MA-61, 2007 WL 1739723 at *2 (Ohio App. Ct. June 15, 2007).

       An unsuccessful post-conviction petitioner must appeal within 30 days of judgment, or

within 30 days of the resolution of a post-judgment motion to file findings of fact and

conclusions of law.  Ohio R. App. P. 4(A)(1), (B)(2)(D).  A court of appeals has no authority to

grant a petitioner's motion for leave to file a delayed appeal in a post-conviction context.  *State*

*v. Harvey*, 428 N.E.2d 437, 438 (Ohio Ct. App. 1980).

## V.    Analysis

### A.    Ground One

       In Ground One, Hilliard seeks habeas relief based on his claim that trial counsel rendered

ineffective assistance by failing to fully investigate mitigating factors that he contends would

have changed the outcome of his case.  ECF Doc. 9, Page ID# 287.  Specifically, Hilliard argues

that trial counsel should have asked the court to consider imposing the minimum available

sentence because he was a first-time offender and because he showed remorse for his actions.  *Id.*

Hilliard's traverse asserts that he might have received a shorter sentence or lesser charge if trial

counsel told the court that his "extreme love for the victim" caused him to "act[] in a sudden fit

of rage."  ECF Doc. 12, Page ID# 320–21.

#### 1.    Procedural Default

       Hilliard's claim that trial counsel rendered ineffective assistance by failing to fully

investigate mitigating factors is procedurally defaulted because he did not raise it on direct

appeal, in a timely state post-conviction petition, or on appeal from the denial of his state

post-conviction petition.  Hilliard's failure to raise this claim on direct appeal, or on appeal from

18

the denial of his post-conviction petition, means that he never fairly presented and exhausted his state court remedies for those claims. *Manning*, 912 F.2d at 881. Because Hilliard can no longer pursue state court remedies related to the alleged ineffectiveness of his trial counsel, his claim is technically "exhausted," but he has procedurally defaulted it. *See Woodford v. Ngo*, 548 U.S. 81, 92–93 (2006) ("In habeas, state-court remedies are described as having been 'exhausted' when they are no longer available, regardless of the reason for their unavailability."); *see also Wiley*, 647 F.2d at 647 (explaining that 28 U.S.C. § 2454(b)(1)(A)'s exhaustion requirement "does not require pursuit of a state remedy [when] such pursuit is clearly futile").

Here, Hilliard failed to follow the Ohio procedural rules for filing a claim alleging ineffective assistance of trial counsel. *Williams*, 260 F.3d at 693; *Maupin*, 785 F.2d at 138. To the extent that Hilliard's claim relies on facts that were within the trial record, his failure to present his claim on direct appeal procedurally barred him from raising it in a later post-conviction petition. *Cole*, 443 N.E.2d at 171; *Reynolds*, 679 N.E.2d at 1133; ECF Doc. 6-1 at Ex. 9, Page ID# 78, 82–89. Further, to the extent that Hilliard's claim relies on facts outside the trial record, his failure to raise it in a timely post-conviction petition precluded its review on the merits.[5] Ohio Rev. Code § 2953.219(A)(2); *Fields*, 736 N.E.2d at 935; ECF Doc. 6-1 at Ex. 17, Page ID# 161–72. Moreover, even if Hilliard's post-conviction petition were timely filed, his failure to timely appeal from its denial deprived the state courts of a full opportunity for review.[6] *Harvey*, 428 N.E.2d at 438; Ohio R. App. P. 4(A)(1), (B)(2)(D). Thus, because Hilliard

---

[5] As Hilliard's convictions and sentences became final on April 28, 2011, he had until May 30, 2011, to file a timely direct appeal, and until May 29, 2012, to file a timely post-conviction petition. Ohio R. App. P. 4(A); Ohio Rev. Code § 2953.21(A)(2); *Fields*, 736 N.E.2d at 935; ECF Doc. 6-1 at Ex. 4, Page ID# 54. Thus, the time to file a post-conviction petition expired well before Hilliard filed his July 7, 2015, petition. ECF Doc. 6-1 at Ex. 17, Page ID# 161–72.

[6] As Hilliard's motion for findings of facts and conclusions of law regarding his post-conviction motion was denied on August 3, 2015, Hilliard's time to appeal the denial of his post-conviction petition expired on September 2, 2015. Ohio R. App. P. 4(A)(1), (B)(2)(D); ECF Doc. 6-1 at Ex. 20, Page ID# 181.

failed to fairly present his ineffective assistance of trial counsel claim in state court, and because state law no longer allows him to raise that claim, it is procedurally defaulted.  *Williams*, 460 F.3d at 806; *Baston*, 282 F. Supp. 2d at 661.

The text of the state trial court's summary dismissal of Hilliard's post-conviction petition does not clearly indicate whether the state trial court dismissed Hilliard's ineffective assistance of trial counsel claim because it wasn't asserted in his direct appeal, or because his petition was untimely.  ECF Doc. 6-1 at Ex. 18, Page ID# 176.  Nevertheless, because Ohio trial courts are excused from filing findings of fact and conclusions of law when dismissing a post-conviction petition as untimely, the court's refusal to issue findings of fact and conclusions of law – despite Hilliard's request that they be issued – implies that Hilliard's petition was dismissed as untimely. *See* Ohio Rev. Code § 2953.21(D); *Greene*, 781 N.E.2d at 156; *see also Harrington*, 562 U.S. at 99 (indicating that "state procedural principles" may rebut the ordinary presumption that a claim was denied on the merits); ECF Doc. 6-1 at Exs. 18 and 20, Page ID# 176, 181.  Further, Hilliard acknowledges that he did not present this claim on direct appeal, file a timely post-conviction petition, or appeal the denial of his untimely post-conviction petition.  ECF Doc. 12, Page ID# 319–20.

As cause for his procedural default, Hilliard asserts that he was never advised of his right to appeal and the state court did not "give [him] anything to appeal" when it declined to state the reasons for denying his petition.  ECF Docs. 9 and 12, Page ID# 288, 320.  Hilliard's argument here, however, is unavailing, because: (1) Ohio law allows a petitioner to appeal immediately when his petition is dismissed as untimely, even when the court has not filed findings and conclusions; and (2) petitioner's ignorance of the law and procedural requirements is not an external factor sufficient to establish cause excusing his procedural default.  *Coleman*, 501 U.S.

20

at 750; *Bonilla v. Hurley*, 370 F.3d 494, 498 (6th Cir. 2004) (holding that a petitioner's ignorance of the law and procedural requirements did not excuse his procedural default); *Krichbaum*, 2007 WL 1739723 at *2.  Hilliard does not argue that his conviction was a fundamental miscarriage of justice, much less point to any evidence showing that he was actually innocent.  *Bousley*, 523 U.S. at 623; *Schlup*, 513 U.S. at 324; *Lundgren*, 440 F.3d at 764. Accordingly, Hilliard has not overcome his procedural default on his ineffective assistance of trial counsel claim, and this Court need not review the merits of that claim.  *Coleman*, 501 U.S. at 750; *Williams*, 260 F.3d at 693; *Maupin*, 785 F.2d at 138.

## 2.    Merits

The court is not required to dispose of Hilliard's Ground One claim on the basis of procedural default.  When a claim plainly lacks merit, it can be addressed on that basis.  To establish that trial counsel rendered constitutionally ineffective assistance, in violation of a petitioner's Sixth Amendment right to counsel, a petitioner must show that: (1) the attorney made such serious errors he was not functioning as "counsel" guaranteed by the Sixth Amendment; and (2) counsel's allegedly deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  Under *Strickland*'s error prong, a petitioner must show that counsel's representation fell below an objective standard of reasonableness based on all the circumstances surrounding the case.  *Id*. at 688.  "Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy."  *Id*. at 689.  To satisfy *Strickland*'s prejudice prong, a petitioner must demonstrate that a "reasonable probability" exists that, but for his counsel's errors, the outcome of the trial

would have been different.  *Id.* at 694.  "An error by counsel, even if professionally

unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error

had no effect on the judgment."  *Smith v. Jago*, 888 F.2d 399, 404 (6th Cir. 1989), cert. denied,

495 U.S. 961, 110 S. Ct. 2572, 109 L. Ed. 2d 754 (1990) (quoting *Strickland*, 466 U.S. at 691).

Hilliard's ineffective assistance of trial counsel claim is meritless.  During the sentencing

hearing, Hilliard's trial counsel specifically alerted the court to Hilliard's first-time offender

status, to his acceptance of responsibility for his actions, and to his remorse as mitigating factors.

ECF Doc. 6-2, Page ID# 263–64.  Thus, the record belies any claim that Hilliard's trial counsel

committed any error, much less one an error that fell below objectively reasonable standards and

prejudiced him, by failing to investigate or argue in mitigation that Hilliard was a first-time

offender who showed remorse for his actions.  *Strickland*, 466 U.S. at 687–89, 694; *Smith*, 888

F.2d at 404.  Moreover, Hilliard's argument that counsel should have told the court that his

"extreme love for the victim" caused him to "act[] in a sudden fit of rage," cannot overcome the

presumption that counsel's decision to discuss instead Hilliard's acceptance of responsibility,

remorse, and "psychiatric testing" was sound legal strategy.  *Strickland*, 466 U.S. at 687–89,

694; *Smith*, 888 F.2d at 404; ECF Docs. 6-2 and 12, Page ID# 263–64, 320–21.  Accordingly, I

recommend that the court deny Hilliard's Ground One claim for relief on either or both of the

grounds that the claim lacks merit or that it was procedurally defaulted.

### B.    Ground Two

In Ground Two, Hilliard seeks habeas relief based on his claim that the state trial court

deprived him of due process and equal protection under the Fourteenth Amendment by not

giving any reason for denying his post-conviction petition.  ECF Doc. 1 and 9-1, Page ID# 10–

11, 290–91.  Hilliard's traverse acknowledges that his post-conviction petition was denied as

untimely but asserts that the state statute governing the time to file a post-conviction petition was ambiguous. ECF Doc. 12, Page ID# 321–22. He asserts that this court should "review if the state acted prejudicially with [regard] to the Petitioner by not properly applying state law when the trial court denied Petitioner's post-conviction" petition. *Id.* at 322.

Hilliard's Ground Two claim is squarely foreclosed by the Sixth Circuit's holding that errors in state post-conviction proceedings are outside the scope of federal habeas corpus review. *Cress*, 484 F.3d at 853; *Kirby*, 794 F.2d at 248. Moreover, Hilliard's claim, seeking review of whether the state trial court improperly applied state law, raises only a noncognizable question of state law. This court is not allowed to either review or grant relief in response to such claims unless there has been a fundamental miscarriage of justice – something that is absent here. *Estelle*, 502 U.S. at 68; *Lewis*, 497 U.S. at 70; *Engle*, 456 U.S. at 121 n.21; Bradshaw, 546 U.S. at 76; *Allen*, 845 F.2d at 614. Accordingly, I recommend that the court dismiss Hilliard's Ground Two claim for relief as noncognizable.

### C.     Ground Three

In Ground Three, Hilliard seeks habeas relief based on his claim that appointed counsel for his delayed direct appeal rendered constitutionally ineffective assistance by failing to argue that trial counsel rendered constitutionally ineffective assistance. ECF Doc. 9-1, Page ID# 292. Specifically, Hilliard asserts that appellate counsel should have argued that trial counsel was constitutionally ineffective for failing to raise an allied offense issue at sentencing and object to sentencing being conducted before a hearing to determine whether his charges should merge could be held. *Id.* Hilliard's traverse contends that appellate counsel was ineffective because he failed to present a winning argument on appeal, and that he "should have argued that the trial

court did not hold a hearing to determine if the two charges of aggravated murder and kidnapping are allied offenses of similar import."  ECF Doc. 12, Page ID# 322–23.

Hilliard's Ground Three claim lacks merit.  The Ohio Court of Appeals did not violate clearly established federal law, or reach an unreasonable determination of the facts, in holding that Hilliard's ineffective assistance of appellate counsel claim did not satisfy the *Strickland* test. 28 U.S.C. § 2254(d).  The Ohio Court of Appeals reasonably determined that Hilliard's counsel did not commit any error, much less one an error that fell below objectively reasonable standards or prejudiced him, by choosing to directly challenge the allied offenses issue rather than raise it through the lens of ineffective assistance of counsel.  *Wiggins*, 539 U.S. at 528–29; ECF Doc. 6-1 at Ex. 21, Page ID# 197–202.  Under Ohio law, appellate counsel was limited to presenting claims based on the facts in the trial court record.  *See Johnson*, 2012 WL 3612093 at *5.  In light of the Ohio Court of Appeals finding that the record did not contain sufficient facts to establish that Hilliard's aggravated murder and kidnapping charges were allied offenses, appellate counsel could not have shown that trial counsel's failure to raise the allied offense issue prejudiced him.[7]  *See id.*; *see also Cullen*, 563 U.S at 181 ("[R]eview under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits"); ECF Doc. 6-1 at Exs. 9, 12, and 21, Page ID# 90, 120–21, 201.  Further, the state court reasonably determined that Hilliard's appellate counsel was not ineffective for failing to anticipate that an Ohio Supreme Court decision – issued after he submitted his appellate brief –

---

[7] Although Hilliard was sentenced separately on his murder and kidnapping charges, thus providing a factual basis for a claim that an allied offense analysis should have been made in the trial court, it bears mentioning that the trial court imposed concurrent prison terms.  Hilliard will not be required to serve any additional time for the kidnapping offense, particularly since his mandatory minimum sentence on the murder charge requires him to serve more time on that offense than he is required to serve for the kidnapping charge.  In other words, by the time Hilliard is eligible for parole on the murder charge, the kidnapping sentence will have been completely served.

would foreclose his direct challenge to the trial court's failure to address *sua sponte* the allied offenses issue.  *See Thompson v. Warden, Belmont Corr. Inst.*, 598 F.3d 281, 288 (6th Cir. 2010) ("[A]ppellate counsel is not ineffective for failing to predict the development of the law."); ECF Doc. 6-1 at Exs. 12 and 21, 112, 119, 201.  Moreover, Hilliard has not pointed to any decisions by the United States Supreme Court with which the state court of appeals' decision is inconsistent.  *Lockyer*, 538 U.S. at 71–72; *White*, 134 S. Ct. at 1702; *Early*, 537 U.S. at 8; *Mitchell*, 540 U.S. at 17; *Williams*, 529 U.S. at 412–13.  Thus, Hilliard has not met his burden to overcome the ADEPA's presumption of correctness by showing that the state court's ruling "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."  *Harrington*, 562 U.S. at 103; *Schriro*, 550 U.S. at 473; *Burt*, 134 S. Ct. at 15; 28 U.S.C. § 2254(e)(1).  Accordingly, I recommend that the Court deny Hilliard's Ground One claim for relief.

## VI.    Summary of Findings and Recommendation

Hilliard's claims all fail as a matter of law for the following summarized reasons:

**Ground One:**  Procedural default and lack of merit.

**Ground Two:**  No cognizable federal constitutional issue raised.

**Ground Three:**  Lack of merit.

## VII.   Certificate of Appealability not Recommended

### A.    Legal Standard

As amended by the AEDPA, 28 U.S.C. § 2253(c)(1) provides that a petitioner may not appeal a denial of an application for a writ of habeas corpus unless a judge issues a certificate of appealability.  The statute further provides that "[a] certificate of appealability may issue . . .

only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).

Although the statute does not define what constitutes a "substantial showing" of a denial of a constitutional right, the burden on the petitioner is obviously less than the burden for establishing entitlement to the writ; otherwise, a certificate could never issue.  Rather, the courts that have considered the issue have concluded that "'[a] substantial showing requires the applicant to "demonstrate that the issues are debatable among jurists of reason; that a court could resolve the issues (in a different manner); or that the questions are adequate to deserve encouragement to proceed further."'"  *Hicks v. Johnson*, 186 F.3d 634, 636 (5th Cir. 1999) (quoting *Drinkard v. Johnson*, 97 F.3d 751, 755 (5th Cir. 1996)(quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983)); *accord Slack v. McDaniel*, 529 U.S. 473, 483–84 (2000).  The statute requires that certificates of appealability specify which issues are appealable.  28 U.S.C. § 2253(c)(3).

Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254, provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  Rule 11(a), 28 U.S.C. foll. § 2254.  The rule tracks the requirement of § 2253(c)(3) that any grant of a certificate of appealability "state the specific issue or issues that satisfy the showing required by § 2253(c)(2)."  Rule 11(a).  In light of the Rule 11 requirement that the Court either grant or deny the certificate of appealability at the time of its final adverse order, a recommendation regarding the certificate of appealability issue is included here.

### B.     Analysis

When a petition is to be dismissed on a procedural basis, the inquiry under § 2253(c) is two-fold.  In such cases, a certificate of appealability "should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling."  *Slack*, 529 U.S. at 485 (emphasis added).  As the Supreme Court explained, "[w]here a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further.  In such a circumstance, no appeal would be warranted."  *Id*. at 486.  If the Court accepts my recommendations, Hilliard will not be able to show that the Court's rulings on his procedurally defaulted, meritless, and non-cognizable claims are debatable.  Thus, I recommend that a certificate of appealability not be issued.

## VIII.  Recommendations

I recommend that the Court DENY Hilliard's petitions for writ of habeas corpus (ECF Docs. 1 and 9) in their entirety.  I further recommend that Hilliard not be granted a certificate of appealability.

Dated: November 26, 2018

Thomas M. Parker
United States Magistrate Judge

---

## OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this document.  Failure to file

27

objections within the specified time may waive the right to appeal the District Court's order.  See *U.S. v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn,* 474 U.S. 140 (1985), reh'g denied, 474 U.S. 1111 (1986).